**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: APPLICATION OF OMAR ALGHANIM FOR AN ORDER TO TAKE EXPEDITED DISCOVERY FOR USE IN FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No.: |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF OMAR ALGHANIM FOR AN ORDER TO TAKE EXPEDITED DISCOVERY FOR USE IN FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

FACTS ................................................................................................................................2

ARGUMENT ......................................................................................................................6

I.      THIS APPLICATION SATISFIES THE REQUIREMENTS OF SECTION 1782. ...........6

II.     THE DISCRETIONARY FACTORS ALL FAVOR GRANTING THIS
APPLICATION. ......................................................................................................8

        A.     Milbank is not a participant in the foreign proceeding. ............................8

        B.     This Court's assistance would not offend Kuwait or its courts. ...............9

        C.     The application comports with Kuwaiti proof gathering rules and
restrictions. ...............................................................................................10

        D.     The evidence sought by the application is not unduly intrusive or
burdensome. ..............................................................................................11

CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ........................6, 10

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ..................................................9

*In re Application of 000 Promneftstroy*, 134 F. Supp. 3d 789 (S.D.N.Y. 2015) .............................9

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ..................................................................8, 9, 10

*In re Application of Operacion y Supervision de Hoteles*,
  2015 WL 82007 (S.D.N.Y. Jan. 6, 2015) ..................................................................................9

*In re Aso*, 2019 WL 2345443 (S.D.N.Y. June 3, 2019) ..................................................................8

*In re Fund for Protection of Investor Rights in Foreign States*,
  2020 WL 3833457 (S.D.N.Y. July 8, 2020) .............................................................................7

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP*,
  110 F. Supp. 3d 512 (S.D.N.Y. 2015)......................................................................................7

*In re XPO Logistics, Inc.*, 2017 WL 6343689 (S.D.N.Y. Dec. 11, 2017) ......................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...................................... passim

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358 (S.D.N.Y. 2014)..........9

*Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83 (2d Cir. 2004).........................6, 7

## OTHER AUTHORITIES

28 U.S.C. § 1782........................................................................................................... passim

Fed. R. Civ. P. 26(b)(1)................................................................................................................11

**INTRODUCTION**

The underlying facts to this application are straightforward, and the relief requested is limited. Petitioner Omar Alghanim is a Kuwaiti businessperson. He is engaged in litigation in a Kuwaiti court with his father, Kutayba Alghanim, also a Kuwaiti businessperson. A settlement agreement signed by both Omar and Kutayba[1] on or around November 28, 2019 is relevant to the dispute pending between them in the Kuwaiti courts. After executing that agreement, Kutayba emailed it to Omar on November 28, 2019, copying two lawyers who have represented both Kutayba and Omar—Sam Habbas (in Kuwait) and David Stoll, a partner at Milbank LLP.

The scope and effect of that settlement agreement, and its implications for Omar's and Kutayba's respective claims and defenses, is a matter for the Kuwaiti courts. But regrettably and disturbingly, Kutayba has now questioned the enforceability of the agreement altogether. Initially anticipating that Kutayba might claim his signature on the agreement to be a forgery, Omar asked Milbank to confirm that Stoll received the same email from Kutayba that Omar had received, attaching the fully executed agreement, both to demonstrate the authenticity of that agreement and to support the conclusion that Kutayba signed that agreement freely. In the meantime, Kutayba has now advanced the position in Kuwait that he was fraudulently induced into signing the agreement, notwithstanding that he was fully represented in its negotiation and documentation. Surprisingly, Milbank refused even the above pre-litigation request to authenticate the document, presumably at Kutayba's insistence.

The matter in Kuwait has now been referred for expert hearings. So that the Kuwaiti court can move quickly past a frivolous sideshow regarding enforceability and move to the

---

[1] Omar intends no disrespect to his father by the use of his first name in this application. As they share a last name, the use of first names is for convenience only.

substantive issues in the litigation between Omar and Kutayba, Omar has filed this proceeding to collect promptly discovery necessary to substantiate in Kuwait the authenticity of the November 28, 2019 agreement and to show that this agreement was freely entered into both by Kutayba and by Omar. The Court should enter the proposed order accompanying this application and authorize the proposed limited and targeted discovery of Milbank seeking only non-privileged information for use in the Kuwait proceeding.

## FACTS

Yusuf Ahmed Alghanim and Sons W.L.L. (also known as "Alghanim Industries") is the controlling company of a multibillion dollar Kuwaiti conglomerate (the "Alghanim Group") founded in 1932 by Yusuf Alghanim, grandfather of petitioner Omar Alghanim. Declaration of Omar Alghanim ¶ 2 ("Omar Declaration"). Until recently, Omar was the Group CEO of Alghanim Industries; Omar has also served in various other corporate roles, including as Chairman of Gulf Bank, one of the largest banks in Kuwait. *Id.* ¶¶ 2-3. Omar's father, Kutayba Alghanim, was the Chairman of Alghanim Industries until 2018, and is now Executive Chairman. *Id.* ¶ 4.

In late 2019, Omar and Kutayba had a falling out over both personal and business issues, prompting Omar to leave Alghanim Industries in early 2020. *Id.* ¶¶ 2, 5. Before Omar left Alghanim Industries, on or around November 28, 2019, Omar and Kutayba entered into a Mutual Settlement and Release Agreement (the "Agreement") intended to address and resolve certain of those issues. *Id.* ¶ 6. On November 28, 2019, Kutayba emailed a fully executed copy of the Agreement to his lawyers, David Stoll, a partner in Milbank LLP, and Essam (Sam) Habbas, a partner in ASAR Legal, a Kuwait-based law firm. *Id.* ¶ 9 & Ex. 1. Milbank and ASAR Legal have each represented both Kutayba and Omar. *Id.* ¶ 10. Kutayba also copied Omar on his email to Stoll and Habbas transmitting the fully executed Agreement. *Id.* ¶ 9.

Two aspects of the Agreement bear note. First, Omar and Kutayba agreed to broad general releases as to one another. *Id.* ¶ 6 & Ex. 1 attachment ¶¶ 2-3. Those releases extend to claims by Omar against the Alghanim Group, and claims by the Alghanim Group against Omar. *Id.* Second, certain rights and obligations are carved out of those general releases, and one such carve-out, noted in a handwritten annotation and initialed by both Kutayba and Omar, is "OKA indemnity KD 15 mm." *Id.* ¶ 7 & Ex. 1 attachment at 1. This phrase is a reference to an "indemnity" payment owed by Kutayba to Omar in partial settlement of their disputes. *Id.* Omar and Kutayba thus agreed through the Mutual Settlement and Release Agreement that this "indemnity" payment would be 15 million Kuwaiti Dinars ("KD")—about $50 million—and other than with respect to certain other discrete carve-outs, agreed to release one another from all other claims. *Id.* ¶¶ 6-8 & Ex. 1 attachment.[2]

Kutayba and Omar are now in litigation in Kuwait. *Id.* ¶ 11; Declaration of Bader El Jeaan ("El Jeaan Declaration") ¶ 2. Among other things, Kutayba has claimed in that proceeding (the "Kuwait Action") that Omar owes approximately KD 21.6 million (approximately $71 million) to the Alghanim Group for personal expenses incurred during Omar's tenure as Chief Executive Officer, and Omar has claimed that Kutayba has failed to pay the agreed-upon KD 15 million "indemnity" payment (as well as that the Alghanim Group has failed to pay a statutory "end-of-service" payment that accrued at the time Omar departed Alghanim Industries in early 2020). Omar Declaration ¶ 11; El Jeaan Declaration ¶ 3. Omar's position with respect to the claims and counterclaims pending in Kuwait is that the carveout in the Agreement clearly

---

[2] Those other carve-outs pertain in large part to various other agreements between Kutayba and Omar, including promissory notes, powers of attorney, sales agreements, and other contracts. *See id.* Ex. 1 attachment at Schedule 1. Notably, those promissory notes were at that time held in escrow by Milbank LLP. *See* Declaration of Bader El Jeaan ¶ 9.

3

establishes Kutayba's liability for the 15 million KD payment, and that the general release in the Agreement just as clearly precludes claims against Omar for purported unreimbursed personal expenses incurred with Alghanim Group assets (even were such claims based in fact or otherwise actionable, which they are not).  Omar Declaration ¶ 11; El Jeaan Declaration ¶ 5.  The interpretation of the Agreement is, of course, a matter for the Kuwaiti courts.

In the first court hearing convened in Kuwait after Kutayba filed his claims against Omar, Omar's Kuwaiti counsel sensed that his counterparty might not even be aware of the Mutual Settlement and Release Agreement that Kutayba and Omar had signed.  El Jeaan Declaration ¶ 6.  That counsel anticipated (correctly, as it turned out) that the surprise expressed by Kutayba's Kuwaiti counsel upon hearing about the Mutual Settlement and Release Agreement might presage an effort on Kutayba's part to disclaim that agreement or seek to undermine it.  *Id.*  At that time, Omar and his counsel believed Kutayba might argue that his signature on the Agreement was forged.  *Id.*  For this reason, undersigned United States counsel reached out on December 29, 2020 to David Stoll of Milbank with a simple request:

> David:
>
> I hope you have had a pleasant holiday season, and that you are safe and well.  I am writing further to the ongoing dispute between Kutayba Alghanim and Omar Alghanim.  As you know, Kutayba and Omar entered into the Mutual Settlement and Release Agreement that was included with the attached email from Kutayba, sent to you and to Sam Habbas, and copied to Omar.  You received that email on or around Nov 28, 2019, as I'm sure your electronic files will confirm.  There currently is litigation in Kuwait between Omar and Kutayba, as to which this document is relevant.  In the interest of avoiding any needless skirmishing in Kuwait, and sparing both us and you (and Omar and Kutayba) the costs, burdens and effort of our filing a Section 1782 petition here in the US to authenticate the attached the document, I'd like to request that you consider executing the attached draft affidavit to confirm that the email was received by you from Kutayba.  I am hopeful this will save everyone a lot of trouble.

> Happy to discuss with you at your convenience.
>
> Regards and happy new year,
>
> Bob

Declaration of Robert A. Van Kirk ("Van Kirk Declaration") ¶ 2 & Ex. 1. Counsel attached a proposed one-page affidavit for Stoll's consideration attesting that Kutayba is his client, that he received Kutayba's November 28, 2019 email, and that he understood that email to come from Kutayba. *Id.* Ex. 1 (attachment). Undersigned counsel and Milbank discussed this request by telephone on January 8, 2021. *Id.* ¶ 3. During that call, it was made clear to Milbank that the very simple request made of it was sought in an effort to obtain a détente on any issues of authenticity, validity or enforceability of the Agreement, but that if Milbank was not willing to cooperate, a proceeding such as this one might necessitate broader (though still tailored) requests for discovery. *Id.* Milbank said that it would take the request under consideration for discussion both internally and with Kutayba. *Id.* After multiple requests for additional time to consider Omar's straightforward December 29, 2020 request, Milbank informed undersigned counsel on January 22, 2021 that it would not agree. *Id.* ¶¶ 4-5 & Ex. 2.

Kutayba has now challenged the enforceability of the November 28, 2019 Mutual Settlement and Release Agreement by claiming that he was induced fraudulently into signing it (after which he was evidently further fraudulently induced into sending an email attaching that agreement he signed to his lawyers, Stoll and Habbas, copying Omar). El Jeaan Declaration ¶ 7. The Kuwaiti court has referred the matter for expert hearings at which, *inter alia*, Kutayba's claims will be evaluated. Because the enforceability of the Agreement has been called into question in Kuwait on these grounds, prompt discovery on that subject is necessary. As a consequence, Omar seeks a narrow category of non-privileged documents and communications

in Milbank's possession, custody or control relating to the Agreement. Indeed, even a privilege log would help establish that the Agreement was considered, discussed with counsel and freely entered.

## ARGUMENT

**I.      THIS APPLICATION SATISFIES THE REQUIREMENTS OF SECTION 1782.**

Under 28 U.S.C. § 1782(a), the Court may order any person in this District "to give . . . testimony" or "to produce a document or other thing" for use "in a proceeding in a foreign or international tribunal."[3] The purpose of Section 1782 is to enable a litigant in a foreign dispute to obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 authorizes the Court to order discovery for use in a proceeding in a foreign or international tribunal if: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery is for use in a foreign proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see Intel*, 542 U.S. at 246.

"Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Brandi-Dohrn*, 673 F.3d at 80 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz*

---

[3] Subsection (b) of the same provision emphasizes that nothing in subsection (a) "preclude[s] a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him." 28 U.S.C. § 1782(b). Thus, Omar sought Milbank's voluntary (and extremely limited) cooperation first. *See supra* at 4-5. Omar initiated this proceeding only upon Milbank's refusal of that cooperation and Kutayba's specious assertion—leveled for the first time more than a year after the Agreement was signed—to have been fraudulently induced into signing the Agreement.

6

*LLP*, 376 F.3d 79, 83 (2d Cir. 2004)). The application at issue here easily satisfies the above three factors.

*First*, Milbank LLP—a major law firm based in Manhattan[4]—"resides" and "is found" in this district. *See, e.g.*, *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (law firm "partners' daily practice of law in this jurisdiction gives it the requisite 'systematic and continuous' presence to be 'found' here for purposes of section 1782.").

*Second*, the pending proceedings in Kuwait plainly qualify as "a foreign proceeding before a foreign tribunal," and the discovery here is intended for "use" in those proceedings. More specifically, the discovery here is intended to help demonstrate the falsity of Kutayba Alghanim's new contention in those Kuwait proceedings that he was fraudulently induced into signing the November 28, 2019 Mutual Settlement and Release Agreement. *See* El Jeaan Decl. ¶¶ 7-11.

*Third*, Omar Alghanim is an "interested person." There is "[n]o doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256; *In re Fund for Protection of Investor Rights in Foreign States*, 2020 WL 3833457, at *3 (S.D.N.Y. July 8, 2020) (same, quoting *Intel*; because applicant was a complaining party in the foreign proceeding, "it falls squarely within the category of an 'interested person'").

For the above reasons, this application satisfies the statutory prerequisites for discovery pursuant to Section 1782.

---

[4] *See, e.g.*, https://www.milbank.com/en/about-us/contact-us.html.

## II. THE DISCRETIONARY FACTORS ALL FAVOR GRANTING THIS APPLICATION.

Because the statutory factors of Section 1782(a) are all satisfied, the Court has discretion to grant this application. In *Intel*, the Supreme Court identified factors to be considered in evaluating whether to exercise that discretion. These are (1) "[w]hether the person from whom discovery is sought is a participant in the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad'"; (2) "'the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance'"; (3) "'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States'"; and (4) "whether the discovery requests are 'unduly intrusive or burdensome.'" *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (quoting *Intel*, 542 U.S. at 264-65). All of these factors are satisfied here, and the Court therefore should grant the application.

### A. Milbank is not a participant in the foreign proceeding.

Milbank is not a participant in the litigation between Omar and Kutayba in Kuwait. El Jeaan Declaration ¶ 12. Courts are more likely to grant applications for discovery pursuant to Section 1782 if the person from whom discovery is sought is not a participant in the foreign proceeding. That is because, as the Supreme Court held, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. *See, e.g.*, *In re Aso*, 2019 WL 2345443, at *5 (S.D.N.Y. June 3, 2019) (discretionary factor was satisfied where "none of the subpoena targets is a party to the pending litigation" in foreign

proceeding); *In re Application of Operacion y Supervision de Hoteles*, 2015 WL 82007, at *6 (S.D.N.Y. Jan. 6, 2015) (discretionary factor was met where discovery was sought from non-litigant in foreign proceeding); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (denying motion to quash subpoenas issued pursuant to Section 1782 where, *inter alia*, respondent was not a participant in foreign proceeding).

Milbank is not a litigant in the dispute between Omar and Kutayba, and is "outside the . . . jurisdictional reach" of the Kuwaiti courts. *Intel*, 542 U.S. at 264; El Jeaan Declaration ¶ 12. The first *Intel* discretionary factor therefore is satisfied.

### B. This Court's assistance would not offend Kuwait or its courts.

The second *Intel* discretionary factor "asks the Court to weigh the foreign tribunal's 'receptiveness' to assistance from a United States court." *In re Application of 000 Promneftstroy*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015). The evidence sought by this application would be received by the Kuwaiti court where the litigation between Omar and Kutayba is ongoing, and would not offend that judicial system. El Jeaan Declaration ¶¶ 10-11. The Second Circuit has instructed that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (district court erred in assessing that granting discovery would offend judicial system of France where "no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record"). "Such authoritative proof has been found to exist where *the representative of a foreign sovereign has expressly and clearly made its position known*." *In re Application of Gemeinshcaftspraxis*, 2006 WL 3844464, at *6 (emphasis added).

9

Here, the Kuwaiti court with jurisdiction over the pending dispute between Omar and Kutayba has not issued any such "authoritative" ruling precluding the use of the evidence the application seeks. El Jeaan Declaration ¶¶ 10-11. To the contrary, the Kuwaiti court is expected to be receptive to such evidence. *Id*. In the absence of any showing of foreign inhospitality to the evidence at issue in a Section 1782 application, "district courts generally should err on the side of permitting the requested discovery." *In re Application of Gemeinshcaftspraxis*, 2006 WL 3844464, at *6. The second *Intel* discretionary factor therefore also counsels in favor of the Court granting the application.

### C. The application comports with Kuwaiti proof gathering rules and restrictions.

Kuwaiti law does not prohibit discovery of the requested documents. The third *Intel* discretionary factor "aims to protect against abuse of § 1782 as a vehicle to end-run foreign proof-gathering restrictions or other foreign policies." *In re Application of Gemeinshcaftspraxis*, 2006 WL 3844464, at *7. There is no Kuwaiti proof-gathering restriction at odds with the application, El Jeaan Declaration ¶ 11, and while traditional discovery tools may be more limited in Kuwait than in the United States courts, Kuwait is receptive to such foreign discovery, *see id.*

Indeed, the Supreme Court has expressly rejected the notion that Section 1782 requires that the evidence sought be discoverable in the foreign proceeding itself. *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *see also Brandi-Dohrn*, 673 F.3d at 82 (district courts "should not consider the *discoverability* of the evidence in the foreign proceeding," and "should not consider the *admissibility*" of that evidence either). Here, in fact, not only is there nothing under Kuwaiti law that would *preclude* the evidence sought, that evidence is expected to be admissible in the litigation between Omar and

10

Kutayba to demonstrate the authenticity of Kutayba's execution of the Mutual Release and Settlement Agreement. *See* El Jeaan Decl. ¶¶ 10-11.

This factor further weighs in favor of granting the application.

### D. The evidence sought by the application is not unduly intrusive or burdensome.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The discovery being sought through this application—a small set of documents and a limited deposition intended to substantiate in Kuwait the enforceability of the Agreement, is both limited and precise. This *Intel* factor is measured by the standard set forth in Rule 26 of the Federal Rules of Civil Procedure. *In re XPO Logistics, Inc.*, 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (affirming order granting discovery). The rule specifies that the scope of discovery "is limited to matters that are relevant and 'proportional to the needs of the case,' evaluated with the factors enumerated in the rule. *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

Here, the evidence is not of collateral importance. Omar must respond to Kutayba's claim that the Agreement is unenforceable before the Kuwaiti court can determine the scope and meaning of that agreement as it pertains to the issues in dispute between Omar and Kutayba. El Jeaan Declaration ¶¶ 8-10. Nor is the evidence being sought sensitive—Kutayba in fact copied Omar when forwarding the executed agreement to Stoll and Habbas, lawyers that have each represented Omar in the past as well as Kutayba. Omar Declaration ¶ 9 & Ex. 1. The requests in the proposed subpoenas (Van Kirk Declaration Ex. 4) are narrowly tailored and directly relevant to questions that will be at issue in the foreign proceedings. Any burden Milbank may incur by producing the requested discovery is both modest and proportionate given the circumstances. As such, this final factor also weighs in favor of the Court granting this application.

## CONCLUSION

For all the foregoing reasons, Petitioner Omar Alghanim respectfully requests that the Court enter an Order pursuant to Section 1782, granting leave to serve the proposed subpoenas and conduct the requested discovery.

Dated: February 1, 2021

WILLIAMS & CONNOLLY LLP

*/s/* Robert Van Kirk
Robert Van Kirk
  (*pro hac vice forthcoming*)
David S. Kurtzer-Ellenbogen
650 Fifth Avenue, Suite 1500
New York, NY 10019

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
T: (202) 434-5000
F: (202) 434-5029

rvankirk@wc.com
dkurtzer@wc.com

*Counsel for Petitioner*