## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: APPLICATION OF OMAR ALGHANIM FOR AN ORDER TO TAKE EXPEDITED DISCOVERY FOR USE IN FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No.: |

### DECLARATION OF BADER EL JEAAN

I, Bader El Jeaan, having personal knowledge of the statements herein, declare as follows:

1. I am a partner in Meysan Partners, a law firm with offices in Kuwait, the United Arab Emirates, and Lebanon. I am a member of the bar of Kuwait, as well as the bars of the State of New York (active) and the District of Columbia (active).

2. Omar Alghanim and Kutayba Alghanim are involved in pending litigation in Kuwait, in Case No. 8121/2020 (Commercial 38) (the "Kuwait Action"). I represent Omar in these proceedings and thus am familiar with the status of this litigation and the claims involved. I also have represented Omar in the lead-up to the Kuwait Action, including during the period in late 2019 discussed below.

3. The Kuwait Action involves, among other things, a claim by Kutayba that Omar owes approximately 21.6 million Kuwaiti Dinars ("KD") for alleged personal expenses incurred during Omar's tenure as Chief Executive Officer of Alghanim Industries. The litigation also involves a claim by Omar that Kutayba has failed to pay an agreed-upon KD 15 million "indemnity" payment owed to Omar.

4. In defense of Kutayba's claim described above, and in support of his own claim described above, Omar has invoked the terms of a Mutual Settlement and Release Agreement

1

signed by both Omar and Kutayba on or around November 28, 2019 (the "Agreement"). (A copy of the Agreement is attached to Exhibit 1 to the Declaration of Omar Alghanim filed contemporaneously with this declaration.)

5. Omar's position in the Kuwait Action is that in addition to being invalid on the merits, Kutayba's claim against Omar in connection with Omar's alleged personal expenses is precluded by the Agreement's general release (Paragraph 2). Omar's further position is that his claim against Kutayba for a 15 million KD "indemnity" payment is expressly noted as a liability remaining with Kutayba under the terms of the Agreement, and excluded from that same general release.

6. In the first hearing in the Kuwait Action convened on December 21, 2020 after Kutayba's filing of the claim and serving the notice, it was my law firm's impression that such counsel was unaware even of the existence of the Agreement. The lack of awareness of Kutayba's own counsel regarding the Agreement caused me to suspect that Kutayba might seek to disclaim or otherwise undermine the Agreement, such as by asserting that his signature was forged or that the Agreement was otherwise inauthentic.

7. That suspicion has turned out to be well-founded. Kutayba is now claiming that he was induced fraudulently to sign the Agreement, and that the Agreement therefore is unenforceable. Between November 28, 2019 (when the Agreement was signed) and January 2021, Kutayba had never previously made such an assertion.

8. Pursuant to the Civil Code in Kuwait, to establish the unenforceability of the Agreement on these grounds, Kutayba would need to prove that he was intentionally deceived into signing the Agreement. That is, Kutayba would be required to prove that Omar intentionally defrauded him and that he would not have signed the Agreement but for those deceptive acts.

9. To my knowledge, throughout the period of negotiation of the Agreement in or around November 2019, Kutayba had access to his counsel in Kuwait and in the United States, including counsel at Milbank LLP that I understand has represented both Kutayba and Omar previously. Kutayba's counsel in Kuwait made multiple amendments to the initial drafts of the Agreement, including proposing various exclusions to Kutayba's release of Omar in connection with certain other agreements between Kutayba and Omar, some of which being held in escrow with Milbank LLP. (Those other agreements are noted on Schedule 1 to the Agreement; the promissory notes at Schedule 1, Part A(a), Part B(a), Part C(a) were held in escrow at Milbank LLP at this time.)

10. Evidence relating to Kutayba's execution of the Agreement and his voluntary transmission of the Agreement to third parties (including counsel at Milbank LLP) may be relevant and admissible in the Kuwait Action to support a ruling on the authenticity, validity and enforceability of the Agreement. In assessing Kutayba's allegations that he was fraudulently induced to enter into the Agreement, the court in Kuwait will find it relevant to assess whether he understood the nature of the burden imposed by him in the Agreement, whether he entered into the Agreement on his own volition, and whether he was given the opportunity to have the Agreement reviewed by his legal counsel.

11. I have reviewed the discovery sought in the petition to which this declaration is attached, and believe that such evidence will be considered by the court in the Kuwait Action. There is no proof-gathering restriction under Kuwaiti law that would be at odds with the collection or presentment of that discovery in that litigation. To the contrary, foreign discovery such as that sought here has been obtained and used in other Kuwaiti proceedings without objections. The

evidence that is the subject of the proposed discovery requests will directly bear on the validity of the claims at issue and will assist the Kuwaiti court in evaluating the assertions of the parties.

12.     Milbank LLP is not a party in the dispute pending between Kutayba and Omar in Kuwait, and to the best of my knowledge, the court adjudicating that dispute would be unable to exercise jurisdiction over Milbank LLP and compel the production of the discovery sought in the petition to which this declaration is attached.

I declare under penalty of perjury that the above and foregoing is true and correct.

_____
Bader El Jeaan