UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IN RE: APPLICATION OF OMAR ALGHANIM
FOR AN ORDER TO TAKE EXPEDITED DISCOVERY
FOR USE IN FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. SECTION 1782                              No.  21-MC-00167

-------------------------------------------------------x

## Memorandum Order

Before the Court is the Petition of Omar Alghanim ("Petitioner"), seeking permission to obtain discovery pursuant to 28 U.S.C. section 1782 from Milbank LLP ("Milbank"). Milbank has opposed the Petition. The Court has considered all of the parties' submissions carefully, and for the following reasons, denies the Petition in its entirety.

## Background

Petitioner is a Kuwaiti citizen who served as the Group Chief Executive Officer of Yusuf Ahmed Alghanim & Sons W.L.L. ("Alghanim Industries"), a business founded by his grandfather and for which his father, Kutayba Alghanim, serves as Executive Chairman, until February 23, 2020.[1] (Docket entry no. 6, Declaration of Omar Alghanim ("Alghanim Decl.") ¶¶ 1-4.)[2] Petitioner's departure from Alghanim Industries was prompted by disputes with his father "over both personal and business issues." (Id. ¶ 5.) In order to resolve some of those disputes, Petitioner and his father entered into a Mutual Settlement and Release Agreement ("Agreement") on or about November 28, 2019, in which they agreed to release one another from certain claims ("General Releases"). (Id. ¶¶ 6-8.) The Agreement also contained a forum-selection clause,

---

[1]    Facts recited as undisputed are drawn from the parties' submissions as to which there is ` no nonconclusory, contrary factual proffer.

[2]    The Alghanim Declaration was refiled at docket entry no. 28.

providing that the "Agreement shall be governed by Kuwaiti law, and subject to the jurisdiction of Kuwaiti courts." (Id., Ex. 1 ¶ 5.)

On November 28, 2019, Kutayba Alghanim emailed an executed copy of the Agreement to his U.S. attorney, David Stoll, who is a Milbank partner, and his Kuwaiti counsel, Essam (Sam) Habbas, who is a partner in the Kuwait firm, ASAR Legal, copying Omar Alghanim, and writing: "Please see attached." (Alghanim Decl., Ex. 1; Docket entry no. 14 ("Milbank Mem.") at 5.) Milbank maintains that it "did not negotiate or draft the Settlement Agreement, or participate in its signing." (Milbank Mem. at 1; see also docket entry no. 15, Declaration of David J. Stoll, Esq. ("Stoll Decl.") ¶ 3.) Rather, Milbank asserts that its partner, David Stoll, serves as Kutayba Alghanim's U.S. trusts and estates counsel, and Kutayba Alghanim forwarded him the Agreement "as an fyi." (Milbank Mem. at 5, 16.) Petitioner claims that Milbank had a broader role in the context of the Settlement Agreement, asserting that Milbank holds, in escrow, certain promissory notes or agreements that were carved out of the Agreement's General Releases (see docket entry no. 3 ("Alghanim Mem.") at 3 n.2), and that Mr. Stoll also "gave Omar tax and residency-related advice and ventured suggestions on how Omar and Kutayba's dispute might be mediated or resolved." (Docket entry no. 23 ("Reply") at 3.) Milbank submits that Milbank "previously advised Omar on a limited matter that began in November 2017 and ended in or about November 2018," but that matter was "wholly unrelated to the Settlement Agreement, involving the possible acquisition of real estate in New York that was not ultimately purchased, and answered questions about U.S. car registration[.]" (Stoll Decl. ¶ 5.)

Petitioner and his father are now in litigation in Kuwait relating to the scope and enforcement of the Agreement. (Alghanim Decl. ¶ 11.) Petitioner submits that Kutayba Alghanim has "challenged the enforceability" of the Agreement "by claiming that he was

induced fraudulently into signing it." (Alghanim Mem. at 5.) Milbank proffers a declaration from Saad Al Asfour, Kutayba Alghanim's attorney in the Kuwaiti litigation, explaining that Kutayba Alghanim's claim in the foreign proceeding is that "Omar failed to disclose—in violation of Kuwaiti law—that Omar improperly transferred certain of Kutayba's assets to Omar's sons." (Milbank Mem. at 6 (citing docket entry no. 16, Declaration of Saad Al Asfour ("Al Asfour Decl.") ¶ 6).)

Omar Alghanim filed the Petition, now before this Court, seeking discovery from Milbank, purportedly to "establish the authenticity and enforceability of the Agreement" (Reply at 9), and to "establish that the Agreement was considered, discussed with counsel and freely entered." (Alghanim Mem. at 6.) Specifically, Petitioner seeks to compel a deposition as well as the production of "non-privileged [d]ocuments and [c]ommunications" concerning or relating to (1) the "Agreement, dated November 28, 2019 and containing signatures for Kutayba . . . Alghanim and Omar . . . Alghanim"; (2) "the negotiation and/or execution of the" Agreement; (3) "Milbank's knowledge of the facts and/or circumstances relating to the matters or issues covered by the" Agreement; (4) "any email received by David J. Stoll and purporting to be from Kutayba . . . Alghanim on or about November 29, 2019 and concerning or attaching" the Agreement; and (5) the "retention of Milbank by either Kutayba Alghanim or Omar Alghanim, whether individually or jointly, on any matter between January 1, 2016 and the present." (Docket entry no. 10.) For the reasons that follow, the Court denies the Petition in its entirety.

## Discussion

28 U.S.C. section 1782 "permits United States district courts to authorize certain persons to take discovery in aid of foreign proceedings." In re MT Baltic Soul, No. 15-MC-319-LTS, 2015 WL 5824505, at *1 (S.D.N.Y. Oct. 6, 2015). In deciding whether to authorize such

discovery, the Court "must first consider the statutory requirements and then use its discretion in balancing a number of factors."  Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).  The three statutory requirements are that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made[;] (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal[;] and (3) the application is made by a foreign or international tribunal or any interested person."  Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (quoting Brandi-Dohrn, 673 F.3d at 80).

Once the Court determines that the statutory requirements are satisfied, "it has jurisdiction over the petition, and it 'may grant discovery under [section] 1782 in its discretion.'"  Kiobel v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 244 (2d Cir. 2018) (quoting Mees, 793 F.3d at 297).  "This discretion, however, is not boundless."  Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004).  Rather, the Court must consider "the 'twin aims' of [s]ection 1782: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Kiobel, 895 F.3d at 244 (quoting In re Metallgesellschaft, 121 F.3d 77, 79 (2d Cir. 1997)).  The Supreme Court has also identified four factors that guide this Court's discretionary analysis: (1) whether the person from whom discovery is sought "is a participant in [the] foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) whether the petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the requested discovery is "unduly intrusive or burdensome."  Intel Corp. v. Advanced Micro Devices, 542 U.S. 241, 264-65 (2004).  "The Intel

factors are not to be applied mechanically[,]" but rather the Court "should also take into account any other pertinent issues arising from the factors of the particular dispute."  Kiobel, 895 F.3d at 245.

    Here, the parties concede that the Petition satisfies the statutory factors specified in section 1782.  (See Reply at 2 (noting that Milbank "argues only that the discretionary factors . . . weigh against granting this application" (internal quotation and citation omitted)); Milbank Mem. at 9 (arguing that the "Court should deny the Application" based on discretionary factors).)  Petitioner is a Kuwaiti citizen seeking discovery from Milbank, a Manhattan-based law firm, for use in pending litigation proceedings in Kuwait.  (See Alghanim Mem. at 9-10); see also In re MT Baltic Soul, 2015 WL 5824505, at *2 (noting that "section 1782 discovery is available in aid of 'adjudicative' foreign proceedings" (quotation omitted)).  Petitioner is an "interested person" because he is a party to the Kuwaiti litigation proceedings.  See Intel, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [section] 1782[.]").

    Instead, Milbank argues that the Court should deny the application because the discretionary factors the Supreme Court articulated in Intel Corp. v. Advanced Micro Devices "on balance weigh heavily against authorizing Omar to take discovery of Milbank for use in the Kuwait [l]itigation."  (Milbank Mem. at 9.)

    Milbank argues that the first factor weighs against granting discovery because even though Milbank is not formally a party to the Kuwait litigation, Petitioner "in reality seeks discovery of Kutayba—a party to the Kuwait litigation."  (Milbank Mem. at 9.)  Milbank claims that its firm serves as Kutayba Alghanim's "U.S. trusts & estates counsel" (id. at 1), and that "any related documents [to the Agreement] are in Milbank's hands solely because they were sent to the United States as part of 'open communications' between Milbank and its client, Kutayba."

(Id. at 12.) Milbank argues that any files it stores related to its communications with Kutayba belong to him and, because he is a party to the Kuwait litigation and "*is* within the jurisdictional reach of the Kuwaiti courts[,]" assistance through section 1782 is unnecessary. (Id. at 10 (emphasis in original).)

The Court of Appeals for the Second Circuit has "affirmed a denial of a section 1782 application when the respondent New York law firm possessed evidence that belonged to a client, who was a party to the foreign proceeding." In re Mare Shipping Inc., No. 13-MC-238, 2013 WL 5761104, at *4 (S.D.N.Y. Oct. 23, 2013) (citing Schmitz, 376 F.3d at 85); see also Kiobel, 895 F.3d at 245-247 (denying section 1782 application, in part, because foreign company was "involved in foreign proceedings," and "under existing precedent in this Circuit . . . the first Intel factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company").

The Court finds Milbank's arguments on the first Intel factor persuasive. Petitioner claims to seek discovery "on [the] subject" of "the enforceability of the Agreement" to "establish that the Agreement was considered, discussed with counsel and freely entered." (Alghanim Mem. at 5-6.) Petitioner offers no legitimate basis as to why Kutayba Alghanim would not possess, in the legal sense, documents held by Milbank that are related to his communications with that firm, which is his U.S. counsel. See Schmitz, 376 F.3d at 85 (denying section 1782 petition, in part, because "[a]lthough technically the respondent in the district court was Cravath, for all intents and purposes[,] petitioners [were] seeking discovery from [the foreign company], their opponent in the German litigation"). "[D]ocuments in the possession of a party's attorney are deemed to be within the party's possession, custody, or control because the party has the legal right to obtain the documents on demand." In re Mare Shipping, Inc., 2013 WL 5761104, at *4 (citing In re Bank of Cyprus Pub. Co. Ltd., 10-MC-23-JFK, 2011 WL

223168, at *3 n.1 (S.D.N.Y. Jan. 21, 2011)). Because Kutayba Alghanim is the opposing party in the Kuwait litigation, Petitioner's "need for section 1782 discovery is less apparent, as [Petitioner] can apply to the foreign tribunal to compel [Kutayba Alghanim] to order its U.S. lawyers to produce the materials." Id. at *5 (citation omitted); see also Schmitz, 376 F.3d at 85 ("[B]ecause DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for [section] 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" (citation omitted)); Intel, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."). Moreover, the Court shares the "concerns for lawyer-client relations" that the Second Circuit expressed in Kiobel, and notes that were the Court to grant this petition, "[i]n order to avoid potential disclosure issues under Section 1782, U.S. law firms with foreign clients may be forced to store documents and servers abroad, which would result in excessive costs to law firms and clients." 895 F.3d at 247 (noting the "need for full and frank communication between attorneys and their clients" (internal quotation and citation omitted)).

Milbank next argues that the "third Intel factor, which looks to whether the petition 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country,' . . . also weighs in favor of denying" the Petition.[3] (Milbank Mem. at 12

---

[3]   Milbank does not submit any arguments relating to the second factor of the Intel analysis, which calls for consideration of the "nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance." Intel, 542 U.S. at 244. Moreover, "when the district court has no evidence suggesting opposition from the foreign tribunal," as is the case here, "the second Intel prong should count as 'neutral or slightly favor[ing]' the petitioner." In re Application of Kreke Immobilien KG, No. 13-MC-110-NRB, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (citation omitted), abrogated on other grounds by In re Valle Ruiz, 939 F.3d 520 (2d Cir. 2019); see Schmitz 376 F.3d at 81-82 (finding that second factor weighed against granting discovery where German Ministry of Justice requested that the court deny the petition so as not to jeopardize an ongoing German criminal investigation).

(citing Intel, 542 U.S. at 265).)  In support, Milbank advances two main arguments: (1) the information Petitioner is trying to obtain would not be discoverable under Kuwaiti evidentiary procedure, which permits less discovery than do U.S. courts; and (2) Petitioner is improperly attempting to circumvent the Agreement's choice of law and forum selection clause.

In regard to Milbank's first argument, the Court notes that section 1782 "contains no foreign-discoverability requirement" and "the availability of the discovery in the foreign proceeding should not be afforded undue weight."  Mees, 793 F.3d at 303.  The Court's inquiry should focus not on whether the foreign jurisdiction's rules "fail to facilitate investigation of claims" within its jurisdiction, but, instead, on whether there is "authoritative proof" that the Kuwaiti court "would reject evidence obtained with the aid of section 1782."  In re Warren, No. 20-MC-208-PGG, 2020 WL 6162214, at *8 (S.D.N.Y. Oct. 21, 2020) (quotation omitted) (second emphasis added).  That said, the Court notes that the parties' agreement on the very limited scope of discovery permitted under Kuwaiti law and procedure (see docket entry no. 25, Second Declaration of Bader El Jeaan ("El Jeaan Reply Decl.") ¶ 14 (agreeing with Milbank's proffered interpretation of Kuwait evidence law)), taken together with the Court's conclusions above that Kutayba Alghanim is the real party in interest from whom discovery is sought and is subject to the jurisdiction of the Kuwait court, prompts the Court's concern that Petitioner's application constitutes an improper attempt at forum-shopping.

This concern is heightened by the fact that Petitioner "already assented to foreign authority by signing a contract with [Kutayba Alghanim] that contained a forum selection clause."  Kreke, 2013 WL 5966916, at *7.  Courts in this District have determined that the petitioner's decision to enter into a forum-selection clause is a factor than can weigh against the granting of an application brought under section 1782.  See, e.g., id. (finding that "an application of U.S. discovery protocol . . . would evade foreign proof-gathering restrictions" when petitioner

had "previously agreed to a '[foreign] forum with all its requisite procedural rules'") (citation omitted); Aventis Pharma v. Wyeth, No. 19-MC-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (denying section1782 application and explaining that, "[r]egardless of whether Aventis could have gotten the French Courts to compel production of the documents now sought, Aventis' motion is clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties' in the choice of forum (France) clause."). See also Al-Ghanim v. IAP Worldwide, Servs. Inc., No. 6:11-CV-467-ORL-19-DAB, 2012 WL 13102517, at *10-11 (M.D. Fla. Jan. 18, 2012) (noting that "the very broad forum selection clause in the parties' Agreement weighs against providing assistance to Plaintiff" and denying section 1782 application, in part, because granting relief "would be contrary to the Agreement of the parties to litigate exclusively in Kuwait"); Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 595 (7th Cir. 2011) (noting that court considering section 1782 application should "watch out" for forum selection clause because such a provision "might indicate the parties' preference for a court system that doesn't contemplate the level of compulsory process available in America" and a party subject to such provision who is seeking section 1782 relief may be seeking to "combine the substantive law of a foreign country with the expansive discovery opportunities available in the United States").  Under the circumstances presented here, the Court finds that the analysis under the third Intel factor suggests that granting the Petition would not further the aims of section 1782.

        Milbank further argues that the fourth Intel factor compels the Court to deny the Petition because the discovery sought is unduly burdensome and intrusive.  Petitioner repeatedly claims that the "documents and . . . deposition [sought are] intended to substantiate in Kuwait the enforceability of the Agreement." (Alghanim Mem. at 11; see id. at 10-11 (describing the "evidence sought" through the Petition as meant to help "demonstrate the authenticity of

Kutayba's execution of" the Agreement).) However, Petitioner already has in his possession, and has provided to both this Court and the Kuwait court, the key document relevant to the authenticity of Kutayba Alghanim's execution of the Agreement: the email transmitting the signed agreement to his counsel, copying Petitioner. (See Alghanim Decl, Ex. 1; Milbank Mem. at 13 (citing Al Asfour Decl. ¶ 11).) Beyond this email, Petitioner fails to proffer a basis for a determination that the broad categories of documents he seeks are relevant to the limited purpose of establishing the Agreement's authenticity. To the extent that Petitioner seeks discovery relating to Kutayba's claim that he was fraudulently induced into signing the Agreement, Petitioner has similarly failed to provide a legitimate rationale as to why the documents and testimony requested are relevant to the issue of whether Petitioner failed to make the requisite disclosures under Kuwaiti law.

Petitioner's broad "request has every indication of being an archetypal fishing expedition . . . rather than a *bona fide* attempt to develop evidence substantiating" the authenticity of the Agreement. In re MT Baltic Soul, 2015 WL 5824505, at *3 (emphasis in original). Because Petitioner already possesses the evidence relevant to the limited purpose he proffers for his application—substantiating the Agreement's authenticity—there appears to be no apparent basis for his vast discovery requests other than to harass Milbank and Kutayba Alghanim. See Mees, 793 F.3d at 302 n.18 ("To the extent that the district court finds that Mees already possesses the materials sought in her application, that might support a determination that the application has 'the purpose of harassment' or 'seeks cumulative materials.'" (quotation omitted)); Brandi-Dohrn, 673 F.3d at 81 ("[A] district court may deny the section 1782

application where it suspects that the discovery is being sought for the purposes of harassment."). Thus, the Court finds that the fourth Intel factor weighs heavily against granting the Petition.

Based on the above analysis of the discretionary factors, the Court hereby denies the Petition in its entirety. Although the Second Circuit has "expressed a preference for narrowly tailored discovery orders where possible," see Schmitz, 376 F.3d at 85, any effort to tailor Petitioner's requests here would be futile. The evidence relevant to establishing the authenticity of the Agreement is already in Plaintiff's possession, and any Court order compelling its production would therefore be duplicative and unnecessary.

## CONCLUSION

For the reasons discussed above, the Petition for foreign discovery, pursuant to 28 U.S.C. section 1782, is denied in its entirety.

This Memorandum Order resolves docket entry no. 1. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: May 5, 2022  /s/ Laura Taylor Swain
New York, New York  LAURA TAYLOR SWAIN
Chief United States District Judge